# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

---

**JAMIE PHILLIPS,**

        Plaintiff,

   v.                                                                                     No. CIV 07-0807 BB/RHS

**LARRY FRANCO, an Employee of the
New Mexico Corrections Dept., Probation
And Parole Division, Individually, STEVE
FARMER, an Employee of the New
Mexico Corrections Dept., Probation
And Parole Division, Individually.**

        Defendants.

## MEMORANDUM OPINION AND ORDER

This MATTER comes before the Court on motions for summary judgment submitted by Defendants Steve Farmer and Larry Franco (Docs. # 70 & # 74) (collectively, "the defendants" or "the officers"). After reviewing the submissions of the parties and the relevant law, the Court finds that the defendants' motions should be GRANTED in part and DENIED in part.

### Factual Background

The following facts are undisputed or, where disputed, construed in the light most favorable to Ms. Phillips, as the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). This case involves the officers' search of the plaintiff's residence. She sues

under 42 U.S.C. § 1983 ("Section 1983"), a statute that provides a cause of action to individuals whose federal constitutional rights are violated by state actors acting under color of state law.[1]

Ms. Phillips resided at 2550 East 16th Street in Farmington. According to the defendants, Mr. Joe Peterson, Ms. Phillips' boyfriend at the time, who was under the supervision of the New Mexico Department of Probation and Parole, also resided at that address. Def.'s Mem. (Doc. # 70 at 2). Ms. Phillips, on the other hand, disputes that Mr. Peterson ever resided at the East 16th Street address. *See* Pl.'s Resp. (Doc. # 73 at 2). In any event, as a condition of his probation, Mr. Peterson had agreed to permit warrantless searches of his "living quarters" so long as officers had "reasonable cause to believe" that a search would reveal evidence of either a crime or a probation violation. Probation Acknowl. (Doc. # 70 at Exh. 5).

The defendants assert that on or around August 18, 2005, Officer Franco received an anonymous tip that Mr. Peterson was selling drugs out of his house. *See* Supp. Order (Doc. # 70 at Exh. 4, pg. 2). In response to the alleged tip, Officer Franco sought out Mr. Peterson's probation officer who said Mr. Peterson's residence for purposes of his probation was 2550 East 16th Street. Def.'s Mem. (Doc. # 70 at 2). Officer Franco then asked another probation officer, Defendant Steve Farmer, to join him; and they traveled to the residence for an unannounced visit.

---

[1] Section 1983 provides, in relevant part:
"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

2

Also accompanying Officers Franco and Farmer to 2550 East 16th Street were Officers Griego and O'Donnell, of the Farmington Police Department. *Id.*[2]

As the four officers approached the residence, Mr. Peterson and Ms. Phillips were sitting on a porch in front of the house, and Mr. Peterson went inside. Officer Franco followed Mr. Peterson into the house, even though Ms. Phillips tried to prevent his entry by standing in the doorway and stating that he could not enter without a warrant. *See* Mot. to Supp. Transcr. (Doc. # 82 at Exh. 2, 135:3-136:5). Officer Franco ignored Ms. Phillips, entering the house after Mr. Peterson. *Id.* at 136:8-10. Around that time, an officer on the scene—most likely Officer O'Donnell of the Farmington Police Department—allegedly ordered Ms. Phillips to stay outside while the other officers apprehended Mr. Peterson and searched the home. *Id.*; *see also* Phillips Dep. 135:13-21 ("I would like to say [it was] O'Donnell, but I cannot positively say that").

Once inside, Officer Franco arrested Mr. Peterson on suspicion of violating his probation. N.M. Ct. of App. Op. (Doc. # 70 at Exh 2, pg. 3). The officers then began a search of the residence, during which they discovered guns and crack cocaine. *Id.* Mr. Peterson was charged in state district court with trafficking a controlled substance and violating his probation. *Id.* at 4.

In response, Mr. Peterson filed a motion to suppress, challenging the constitutionality of his arrest and the search of the residence. *Id.* Judge Hynes of the Eleventh Judicial District Court in New Mexico denied Mr. Peterson's motion to suppress. *See* Supp. Order (Doc. # 70 at

---

[2]Initially, Ms. Phillips sued Officers Griego and O'Donnell, as well as the City of Farmington. Before this opinion was filed, however, the Court received notice that those defendants had settled. Thus, the claims against Officer O'Donnell, Officer Griego, and the City of Farmington are no longer at issue in this opinion.

Exh. 4). The New Mexico Court of Appeals affirmed Judge Hynes' denial. N.M. Ct. of App. Op. (Doc. # 70 at Exh. 2, pg. 14).

Those state court decisions notwithstanding, Ms. Phillips now sues the probation officers under Section 1983, claiming that they violated her constitutional rights by searching her house without a warrant and forcing her to remain outside for the duration of their search. For their part, the defendants argue that principles of collateral estoppel bar the plaintiff from relitigating the constitutionality of the search in this Court, as a court of competent jurisdiction has already deemed it lawful. The issues thus presented here are whether the defendants are correct that the doctrine of collateral estoppel bars Ms. Phillips' unlawful search claim, and whether Ms. Phillips' unlawful seizure claim survives summary judgment.

## Standard for Analyzing Summary-Judgment Motions

Federal Rule of Civil Procedure 56(c) governs motions for summary judgment. It is proper "if the pleadings, the discovery . . . on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2007). Also, the Court must view the evidence presented in the light most favorable to the plaintiff. *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996).

## Discussion

**I. Collateral Estoppel Does Not Bar Ms. Phillips' Unlawful Search Claim.**

This case presents a question of first impression in this district, *i.e.*, whether a denied motion to suppress may preclude a Section 1983 claim by an individual who was not a party to the suppression hearing but whose alleged constitutional violation arises out of the same facts.

A logical starting point for this discussion, therefore, is a general explication of the collateral estoppel doctrine.[3]  Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a different cause of action involving a party to the first case. *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Moreover, when a state court has provided fair procedures for determining constitutional claims, the state court's determination has preclusive effect and bars relitigation of the same issue by the same party in federal court. *Id.* at 417.  Also, under certain limited circumstances, an individual who is not designated as a party in an earlier proceeding may still be bound by its outcome. *Taylor v. Sturgell*, 128 S. Ct. 2161, 2167 (2008).

In addition, under New Mexico law, a party seeking to use collateral estoppel as a defense must meet at least two conditions. *Deflon v. Sawyers*, 137 P.3d 577, 583 (N.M. 2006); *see also In re Young*, 91 F.3d 1367, 1374 (10th Cir. 1996) ("in determining the collateral estoppel effect of a state court judgment, federal courts must . . . apply the state's law of collateral estoppel").[4] First, it must establish that the issue to be estopped has been actually litigated and necessarily decided in the prior proceeding. *Deflon*, *supra*, at 583.  Second, the Court must be satisfied that the party to be estopped had a full and fair opportunity to litigate in the prior action. *Id.*  These two conditions are thus the focus of the Court's analysis.

---

[3]Collateral estoppel is also known as "issue preclusion." *See Moss v. Kopp*, 559 F.3d 1155, 1161 n. 7 (10th Cir. 2009) ("The terms 'collateral estoppel' and 'issue preclusion' are used interchangeably.").  To avoid confusion, however, this opinion will refer to the doctrine solely as "collateral estoppel."

[4]New Mexico follows federal law on collateral estoppel. *See Deflon*, *supra*, 137 P.3d at 580 ("federal law and New Mexico law are not divergent on [collateral estoppel] doctrine."). Thus, in addition to New Mexico cases on collateral estoppel, the Court looks to such cases based on federal law for guidance in reaching its decision.

A.  Whether The Issues of Fact and Law Essential to Ms. Phillips' Unlawful Search Claim Were Actually And Necessarily Decided in The Suppression Hearing

The issues of fact and law that Judge Hynes resolved in denying Mr. Peterson's motion to suppress were:  (1) whether Mr. Peterson resided at 2550 East 16th Street; and, (2) whether the officers obtained reasonable suspicion before entering the home.  *See* Supp. Ord. (Doc. # 70 at Exh. 4).  These issues will be determinative in Ms. Phillips' Section 1983 claim, too, because she must convince a fact finder that the officers lacked reasonable suspicion to search Mr. Peterson's living quarters.  *See United States v. Cantley*, 130 F.3d 1371, 1377 (10th Cir. 1997) (finding reasonable officers' warrantless search of areas jointly controlled by a probationer and his co-habitant, pursuant to probationer's agreement to warrantless searches based on reasonable suspicion); *see also State v. Baca*, 90 P.3d 509, 518-19 (N.M. App. 2004) (holding a warrantless search condition permissible if reasonably related to the probationer's rehabilitation).

Indeed, Ms. Phillips cannot prevail in her unlawful search claim unless she shows either that the home at 2550 East 16th Street  was under her exclusive control, or that the officers did not have reasonable suspicion to enter the home.  However, Judge Hynes decided these very questions in the suppression hearing.  Supp. Ord. (Doc. # 70 at Exh. 4).  Given the foregoing, the issues of fact and law which are essential to Ms. Phillips' unlawful seizure claim were actually and necessarily decided in the suppression hearing.

B. Whether Ms. Phillips Had a Full And Fair Opportunity to Litigate Her Claim in The Suppression Hearing

Still unresolved, however, is another important question:  whether Ms. Phillips had a full and fair opportunity to litigate her claim in the suppression hearing.  *See, e.g., Haring v. Prosise*, 462 U.S. 306, 311 (1982) ("among the most critical guarantees of fairness in applying collateral

estoppel is the guarantee that the party to be estopped had . . . a full and fair opportunity [to litigate]"). In general, one "who was not a party to an earlier proceeding has not had a full and fair opportunity to litigate the . . . issues settled in that suit." *Taylor*, *supra*, 128 S. Ct. at 2171.

This general rule, however, is subject to exceptions. *Id.* at 2172-73. The Supreme Court has classified such exceptions into six categories, three of which are implicated in the context of this case. *Id.* First, certain "pre-existing substantive legal relationships between the person to be bound and a party to the judgment" may render collateral estoppel appropriate to bar subsequent litigation. *Id.* at 2172. Second, in limited circumstances, a non-party may be bound by a judgment because she was adequately represented by someone with the same interests who was a party. *Id.* at 2173. Third, "a non-party is bound by a judgment if she assumed control over the litigation in which that judgment was rendered." *Id.*[5] The Court must determine whether this case falls into any of these categories.

> *I.* Ms. Phillips' Relationship With Mr. Peterson Does Not Make Application of Collateral Estoppel Appropriate.

The plaintiff and Mr. Peterson were romantically involved when the events of this case occurred. Such a relationship, however, does not suffice to bind Ms. Phillips because the

---

[5]The additional three categorical exceptions to the general rule against non-party preclusion that the Supreme Court established in *Taylor* are: (1) where a person "agrees to be bound by the determination of issues in an action"; (2) where preclusion is appropriate because an individual is acting as a proxy for the original party who is trying to avoid the outcome in the original action; and, (3) where special statutory schemes foreclose successive litigation. *Taylor*, *supra*, 128 S. Ct. at 2172-73.
    Nothing in the evidence suggests that Ms. Phillips agreed to be bound by Judge Hynes' decision in the suppression hearing. Similarly, no evidence exists that Ms. Phillips is acting as a proxy for Mr. Peterson. In fact, he personally stands to gain nothing from Ms. Phillips' Section 1983 claim, as its outcome has no bearing on his state-court conviction. Finally, there is no statutory scheme which would bar Ms. Phillips' claim here.

7

"substantive legal relationships" exception to the general rule against non-party preclusion involves individuals with "identical or transferred rights in a particular legal interest," such as a piece of real property or ownership in a business association. *Beras v. Carvlin*, 2008 WL 4222594 *slip op*. at *4 (2d Cir. 2008); *see also Taylor*, *supra*, 128 S. Ct. at 2172 (noting that these "qualifying relationships" originated "as much from the needs of property law as from the values of preclusion").[6]  For purposes of collateral estoppel, therefore, Ms. Phillips and Mr. Peterson share no substantive legal relationship.

### *ii.* Mr. Peterson Did Not Adequately Represent Ms. Phillips' Interests in The Suppression Hearing.

The second applicable exception to the general rule against non-party preclusion is a situation in which the person who litigated in the earlier proceeding adequately represented the interests of the non-party therein.  For this exception to apply, the Supreme Court has held that the original litigant must have understood himself to be acting as a representative, and that the court in the first proceeding "took care to protect the interests" of absent parties. *Richards v. Jefferson County*, 517 U.S. 793, 802 (1996).

Neither requirement was met here.  On the contrary, the Court is aware of no indication that Mr. Peterson was acting as Ms. Phillips' representative in his suppression hearing.  In fact, doing so may have been impossible, as the singular aim of his motion to suppress was to protect his personal constitutional rights by excluding inculpatory evidence from his criminal trial. *See, e.g., United States v. Leon*, 104 S. Ct. 3430, 3449 (1984) ("Fourth Amendment rights are

---

[6] As the Supreme Court has indicated, courts commonly refer to these "substantive legal relationships" as "privity." *Taylor*, *supra*, at 2172 n. 8.  However, like the Court in *Taylor*, this Court avoids using the term "privity" because it has taken on a broader meaning in the case law, and its use could lead to unnecessary confusion.

personal rights which . . . may not be vicariously asserted") (quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969)) (internal quotations and brackets omitted).  Similarly, the Court has no reason to believe that the suppression hearing contained special procedures to safeguard the interests of anyone other than Mr. Peterson.

### *iii.* Ms. Phillips Did Not Assume Control Over The Suppression Hearing.

Though it is a more difficult question, it cannot be said that Ms. Phillips assumed control over Mr. Peterson's suppression hearing.  The court resolved this on analogous facts in *Krug v. County of Rennselaer*, 559 F. Supp.2d 223 (N.D.N.Y. 2008).  In that case, Bonnie Krug brought a Section 1983 claim after her husband had filed an unsuccessful motion to suppress in County court.  *Id.* at 243.  Mrs. Krug's claim arose out of the same facts as those that were at issue in her husband's suppression hearing.  *Id.* ("The issue addressed in the County Court is identical to the issue raised here, and was necessarily decided and material").  Also, Mrs. Krug had testified and submitted an affidavit in the suppression hearing.  *Id.*  Nevertheless, the court found that she did not significantly control the proceeding.  *Id.* at 244 (finding that Mrs. Krug's claim should survive summary judgment because, "it is doubtful that *she* had significant control over the presentation of proof") (emphasis in original).  The Court finds the *Krug* court's reasoning persuasive in this case.

As in *Krug*, the fact that Ms. Phillips testified is insufficient to prove that she controlled the presentation of proof in the suppression hearing.  *See Krug*, *supra*, at 243; *see also Michaels v. Gen. Growth Mgmt, Inc.*, 1997 WL 187394 *3 (6th Cir. April 15, 1997) (unpublished) (finding that testimony in an earlier proceeding did not equate with a full and fair opportunity to litigate).

Also, although the same counsel is representing Ms. Phillips in this case as represented Mr. Peterson in the suppression hearing, that, in itself, does not prove that she assumed control over the earlier proceeding or had the opportunity to present proofs and argument.[7]  Moreover, that fact does not mean that Ms. Phillips paid the attorney fees for Mr. Romero's labor in the suppression hearing, or oversaw the presentation of evidence there.  *See Montana v. United States*, 440 U.S. 147, 154-55 (1979) (defining indicia of control in the prior proceeding); *see also Taylor*, *supra*, 128 S. Ct. at 2174 (rejecting a lower court's opinion finding that a non-party's decision to hire the attorney from the prior proceeding meant that the non-party was satisfied "with the attorney's performance in the prior case.").  Accordingly, like Mrs. Krug, Ms. Phillips did not significantly control the presentation of proof or argument in the suppression hearing.

### C. Other Fairness Concern

Lastly, another fairness concern persuades the Court that collateral estoppel should not preclude Ms. Phillips' unlawful search claim.  *See, e.g., Richards*, *supra*, 517 U.S. at 798 (citing the "deep-historic tradition that everyone should have [her] own day in court."); *and Reeves v. Wimberly*, 755 P.2d 75, 78 (N.M. App. 1988) (directing that collateral estoppel should be applied only where the judge determines that its application would not be fundamentally unfair).

In particular, it is well-established that successful motions to suppress cannot bind the individual law enforcement officials who later become defendants in Section 1983 claims arising

---

[7] The defendants also allege that Ms. Phillips plans to call the same witnesses for her civil trial as testified in the suppression hearing.  *See* Def.'s Reply (Doc. # 82 at 5-6).  However, the defendants have not provided any evidence that the witnesses who testified in the suppression hearing will also do so at trial.  Similarly, the defendants claim that Ms. Phillips "was well aware," when she participated in the suppression hearing, that she would eventually sue the officers for civil rights violations.  *See id.* at 6, 11.  In the absence of any evidence corroborating this assertion, however, the Court treats it as conjecture.

out of the same events. *See, e.g., Knott v. Sullivan*, 418 F.3d 561, 568 (6th Cir. 2005) (declining to give preclusive effect to a state-court suppression order); *Kinslow v. Ratzlaff*, 158 F.3d 1104, 1106 (10th Cir. 1998) (finding that successful motion to suppress is not preclusive against individual officers because "the officers could not call witnesses, ... direct the examination of witnesses, . . . or appeal the ruling once it was made.") (internal quotation marks omitted); *and Adams v. Nocon*, 2009 WL 799278 *slip op*. at *4 (E.D. Cal. March 23, 2009) (disallowing collateral estoppel against individual officers because they had no "control over the [earlier] proceeding or direct personal interest in its outcome") (citing *Davis v. Eide*, 439 F.2d 1077, 1078 (9th Cir. 1971)). The Court sees no reason to use collateral estoppel to bar Ms. Phillips' claim when the law would prevent her from invoking the doctrine had Judge Hynes' decision been different. In light of the foregoing, precluding Ms. Phillips from litigating the lawfulness of the officers' actions as they pertained to her constitutional rights would be unfair. Thus, the officers' summary-judgment motion as to this claim (Doc. # 70) should be DENIED.[8]

## II. Ms. Phillips' Unlawful Seizure Claim Fails Because She Has Not Presented Evidence That Either Officer Franco or Officer Farmer Seized Her.

Ms. Phillips also claims that, when the officers entered her residence and required her to remain outside, she was seized in violation of her Fourth Amendment rights. The Fourth Amendment protects the right of citizens to "be secure in their persons, houses, papers, and

---

[8]In their reply brief, the defendants raise the alternative argument that, even if collateral estoppel should not apply, they had reasonable suspicion to search the house. *See* Def.'s Reply (Doc. # 82 at 11). Because the defendants did not make this argument in an earlier submission, however, it cannot now provide a basis for summary judgment. *See Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1139 (10th Cir. 2003) (district court abused its discretion in granting summary judgment by relying on new materials in reply brief without giving the nonmovant an opportunity to file a surreply).

effects, against unreasonable searches and seizures." U.S. Const. amend. IV. To withstand summary judgment, therefore, Ms. Phillips must present evidence that the defendants seized her in violation of the Fourth Amendment. She has not done so.

Indeed, as the factual background section indicates, Ms. Phillips alleged in her deposition testimony that it was Officer O'Donnell of the Farmington Police Department who seized her by forcing her to remain outside. *See* Phillips Dep. 130:6-7 (quoting an officer Ms. Phillips believed to be Officer O'Donnell as saying, "You can't come in, for safety purposes."). However, Officer O'Donnell is no longer a party to this case, and Ms. Phillips has presented no evidence that the remaining defendants seized her. The defendants' summary-judgment motion as to the unlawful seizure claim (Doc. # 74) should thus be GRANTED.

## Conclusion

In sum, the defendants' motions for summary judgment should be GRANTED in part and DENIED in part. Ms. Phillips' unlawful search claim should survive because the collateral estoppel doctrine does not apply to bar it. Finally, with regard to the unlawful seizure claim, Ms. Phillips has not provided evidence that the defendants seized her. For these reasons, the defendants' summary-judgment motions should be GRANTED in part and DENIED in part.

## ORDER

Based on the foregoing Memorandum Opinion (Doc. # 90), it is hereby ORDERED that the defendants' summary-judgment motions (Docs. # 70 & # 74) are GRANTED in part and DENIED in part. Specifically, the officers' summary-judgment motion on the unlawful seizure

claim (Doc. # 74) is GRANTED.  However, the officers' summary-judgment motion on Ms. Phillips' claim of unlawful search (Doc. # 70) is DENIED.

**DATED** at Santa Fe this 7th day of May, 2009.

_____
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE